# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3544-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

C.M.,

     Defendant-Appellant,

and

R.A. and J.G.,

     Defendants.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF P.M.
and J.G.,

     Minors.

_____

Submitted October 28, 2019 – Decided December 11, 2019

Before Judges Sumners and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FG-02-0034-18.

Joseph E. Krakora, Public Defender, attorney for appellant (Robyn A. Veasey, Deputy Public Defender, of counsel; Stephania Saienni-Albert, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae, Assistant Attorney General, of counsel; Sara M. Gregory, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Joseph Hector Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant C.M. (Chloe)[1] appeals from an April 1, 2019 Family Part order terminating her parental rights to her daughters P.M. (Piper) and J.G. (Jasmine), who were ages four and three, respectively, at the time of the guardianship trial. The order also terminated the parental rights of Piper's father, R.A. (Roman), and Jasmine's father, J.G. (Jude), who both did not participate in the guardianship trial and chose not to appeal. Defendant argues the Division of Child Protection and Permanency (Division) did not prove by clear and

---

[1] Initials and pseudonyms are used to protect the privacy of the parties and for ease of reference. R. 1:38-3(d)(12).

convincing evidence the required statutory factors to terminate her parental rights. See N.J.S.A. 30:4C-15.1(a). The Law Guardian supports the termination. After reviewing the record and considering the contentions advanced on appeal, we affirm substantially for the cogent reasons set forth by Judge Magali M. Francois in her oral opinion issued with the order.

The history and evidence are set forth at length in Judge Francois' opinion and need not be repeated here. A brief summary will suffice. Defendant has a history of lacking stable housing and resources to care for Piper and Jasmine. In 2016, Chloe was homeless and left her daughters with S.V. (Serena) who agreed to care for them in her home. Both Chloe and Serena told the Division that they had known each other for two years. The Division was initially concerned about Serena's inability to contact Chloe, but later determined this was a proper arrangement given Chloe's homelessness. The Division also concluded Serena was appropriate because she properly cared for the girls.

Several months later, however, the Division removed the girls from Serena's care because of its concerns that Serena was struggling to care for her own children; one who had health issues. Because there was no availability in the area's homeless shelters, the Division helped Chloe make arrangements for her and her daughters to stay the night at the home of Jude's uncle. The Division

provided transportation to the uncle's home and planned to pick them up the next day to look for other arrangements. When a Division caseworker arrived to transport Chloe and her daughters to social services in order to apply for benefits and shelter assistance, Jude's uncle stated Chloe had left the girls in the basement alone during the night and he did not want them to stay at his home. Chloe admitted to leaving the children alone in the basement to go to a convenience store to buy a drink but claimed it was only for five minutes. To further complicate the situation, Chloe submitted a urine screen that day which was positive for THC,[2] and the Division learned that Chloe had an active warrant for trespassing.

The Division subsequently substantiated an allegation that Chloe failed to supervise her daughters while at the home of Jude's uncle. Because Jude was unable to take care of Piper and Jasmine, the Division executed a Dodd removal[3] of the girls and placed them with resource parents willing to care for them for

---

[2] Tetrahydrocannabinol, the active chemical in marijuana.

[3] A "Dodd removal" refers to the emergency removal of a child from the home without a court order pursuant to N.J.S.A. 9:6-8.21 to -8.82, known as the Dodd Act. N.J. Div. of Youth and Family Servs. v. P.W.R., 205 N.J. 17, 26 n.11 (2011).

an extended amount of time but were not willing to adopt them. Chloe was ordered to submit to random urine screens, a substance abuse evaluation, attend parenting classes, attend therapy and counseling, and was entitled to visitation with her children.

The Division's efforts to find a stable placement for Piper and Jasmine were difficult. Serena was ruled out because of a pending Division case with her daughters. The Commonwealth of Pennsylvania's inter-state placement assessment of Chloe's aunt resulted in a denial that was confirmed on appeal. The Division also ruled out Chloe's grandmother because of her medical issues and inappropriate housing. Eventually, the girls were placed in an approved pre-adoptive foster home with J.G. and P.G. (collectively the Gaines).

Two Division caseworkers assigned to Chloe's family gave uncontroverted testimony detailing their interactions with Chloe during the two years after the Dodd removal, including: (1) their efforts to provide Chloe with assistance in obtaining documents for social services, employment, transportation, and housing; (2) Chloe's inconsistent visitation with her daughters, which was attributed to her transient living situation; and (3) Chloe's continued positive drug test results, her failure to complete any of the multiple

substance abuse treatment programs she was referred to, and her rejection of in-patient treatment recommendations.

Judge Francois summarized testimony from the Division's expert psychologist, Dr. Robert Miller, as follows:

> Based on the pattern of [Chole's] . . . parental behavior with [the] children, missed visitation, continued substance abuse, unwillingness or inability to participate in services, underlying psychological and emotional problems that would impact negatively, significantly negative on her parenting capacity to provide safety, care, emotional nurturance[,] [s]he's demonstrating severe parenting deficits, the repetition of the kind of parenting she experienced as a child and placement of the children in her care and custody would result in significant risk to their psychological development.

Further, Dr. Miller provided uncontroverted testimony that Piper and Jasmine viewed their foster parents as a primary source of care, emotional nurturance, and comfort. He believed they developed a strong secure emotional bond with the Gaines, whereas they had no emotional bond with Chloe. He thus recommended the girls remain with their foster parents with a plan of adoption.

In short, Dr. Miller opined Chloe would not be able to adequately parent in the foreseeable future. He believed Jasmine and Piper would not suffer harm if their relationship with Chloe was severed because they did not have an

emotional bond with her. Dr. Miller believed termination of Chloe's parental rights, followed by adoption, would be in the girl's best interests.

Chloe only appeared at the first day of the three-day guardianship trial. She neither testified nor presented any witnesses.

Following the trial's conclusion, Judge Francois detailed in her oral opinion that the Division had proven by clear and convincing evidence all four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a).

On appeal, defendant presents the following arguments:

> THE TRIAL COURT'S JUDGEMENT TERMINATING [CHLOE]'S PARENTAL RIGHTS MUST BE REVERSED AS THE COURT ERRED IN FINDING THAT DCPP'S EVIDENCE SUPPORTED THE FOUR PRONGS OF N.J.S.A. 30:4C-15.1(a) BY CLEAR AND CONVINCING EVIDENCE.
>
> > I. THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE TRIAL COURT'S LEGAL CONCLUSION THAT [PIPER]'S AND [JASMINE]'S SAFETY, HEALTH OR DEVELOPMENT HAS BEEN OR WILL CONTINUE TO BE ENDANGERED BY THEIR PARENTAL RELATIONSHIP WITH [CHLOE].
> >
> > II. THE TRIAL COURT ERRED IN FINDING THAT [CHLOE] WAS UNWILLING OR UNABLE TO ELIMINATE THE HARM OR PROVIDE A SAFE AND STABLE HOME TO [PIPER] AND [JASMINE].

III. THE TRIAL COURT ERRED IN FINDING THAT DCPP PROVIDED [CHLOE] REASONABLE EFFORTS TO REUNIFY HER WITH [PIPER] AND [JASMINE].

IV. DCPP FAILED TO PROVE THAT TERMINATION OF [CHLOE]'S PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD TO [PIPER] AND [JASMINE].

These arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Judge Francois' oral decision is supported by substantial credible evidence. See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

8

A-3544-18T1